AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Karla TEJANA-Parraga<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)       25-mj- 1165<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __2/19/2025__ in the county of __Orange__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 554(a). | Attempted Smuggling goods from the United States |

This criminal complaint is based on these facts:
See Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Ryan Drake, HSI
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 2/20/2025

_____
*Judge's signature*

City and state: Oralndo, FL.        Hon. Alan Baverman, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ryan Drake, being duly sworn, depose and state the following:

### I.   INTRODUCTION

1. I am a Special Agent with United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so since January 2019. I am currently assigned to the office Assistant Special Agent in Charge, in Orlando, Florida, and within that office, to the Airport Group. Prior to working in the Airport Group, I was assigned to the Border Enforcement Security Task Force and investigated transnational organized crime, international drug trafficking, and international money laundering. I have received training at the Federal Law Enforcement Training Center in Glynco, GA. In the course of my employment with HSI, I have obtained experience and training in various smuggling and export laws. As a Special Agent, I have participated in investigations of violations of these laws and the associated regulations and am authorized to execute arrest and search warrants issued under the authority of the United States.

2. This affidavit is submitted in support of a criminal complaint charging Karla TEJANA-Parraga with smuggling goods from the United States, in violation of 18 U.S.C. §§ 554.

3. The information contained in this affidavit is based in part on information obtained from a review of investigative reports completed by law enforcement, conversations with law enforcement officers, review of electronic evidence and subject interviews. This affidavit does not set forth every fact resulting from the investigation;

1

rather, it sets forth facts sufficient to establish probable cause to believe that the above offenses have been committed and that TEJANA-Parraga committed them. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related only in substance and in part and are not intended to be verbatim recitations. When a date is listed, I mean that the event occurred "on or about" that date. When a time is listed, I mean that the event occurred "in or around" that time period.

## II.   RELEVANT EXPORT STATUTES

4.   It is a federal crime under 18 U.S.C. § 554 to fraudulently or knowingly export or send from the United States, or attempt to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

5.   In accordance with the Export Reform Act ("ECRA"), 50 U.S.C. §§4801-4852 and the Export Administration Regulations ("EAR"), 15 C.F.R. §§730-774, the Bureau of Industry and Security (BIS) regulates the exportation of U.S. origin technologies and commodities, including firearms, from the United States. BIS also regulates certain activities of United States persons subject to the EAR. On March 9, 2020, pistols and rifles that are .50 caliber and below and non-automatic, became subject to Export Administration Regulations, see 15 C.F.R. §§730-774 and were transferred

from the United States Munitions List ("USML") to the Commerce Control List (CCL), see Supplement Number 1 to 15 C.F.R. § 774. On March 9, 2020, and after, such items require an export license from BIS.

6. Exporting firearms from the United States without the required export license pursuant to ITAR and EAR, without filing the required EEI pursuant to 15 C.F.R. § 30.2 and 13 U.S.C. § 305, without notifying a common carrier, pursuant to 18 U.S.C. § 922(e), and as part of a conspiracy to defraud the United States pursuant to 18 U.S.C. § 371, all constitute a violation of 18 U.S.C. § 554 (smuggling).

7. 18 U.S.C. § 554 prohibits the smuggling of goods from the United States, including the fraudulent or knowing export of an object, or facilitating the transportation, concealment, or sale of an object that is intended for illegal exportation.

### III.   PROBABLE CAUSE

8. On February 19, 2025, Homeland Security Investigations (HSI) Orlando received notification from Customs and Border Protection Officers (CBPO) assigned to the Orlando International Airport (MCO) that a subject was being detained for attempting to travel from the United States to Ecuador with firearms concealed within checked luggage.

9. At approximately 12:46 p.m., Special Agent (SA) Ryan Drake and John Kaufman responded to the CBP Federal Inspection Station, located within Terminal C of the Orlando International Airport where TEJANA-Parraga was being detained in the secondary inspection area with two other individuals. Upon arriving, SAs Drake and Kaufman were advised by CBP that TEJANA-Parraga and the two accompanying

individuals, identified as her in-laws, were ticketed passengers aboard Copa Airlines flight No. CM479. TEJANA-Parraga was flying to Guayaqyil, Ecuador with a layover in to Panama City, Panama. TEJANA-Parraga was identified as a citizen of Ecuador, visiting the United States on a B1/B2 visa.

10. CBP agents also advised that during a Transportation Security Administration (TSA) screening, agents observed an anomaly in one of the checked bags assigned to TEJANA-Parraga. TSA agents searched the bag and discovered firearm parts to a disassembled handgun. Parts to the firearm and additional magazines were observed inside packed shoes, socks and inside a water bottle. A further search of the bag revealed firearm parts hidden within the lining of the suitcase and zip-tied to the internal parts of the suitcase's pull-out handled. At that time the Orlando Police Department and Customs and Border Protection was immediately notified.

11. CBP officers arrived and questioned TEJANA-Parraga. Upon identifying all of TEJANA-Parraga's checked bags, CBP located parts to an additional firearm and magazines hidden in a similar manner in TEJANA-Parraga's other checked bags.

12. Upon completing the search of all TEJANA-Parraga's bags, CBP identified enough parts to assemble two firearms and found additional magazines. In TEJANA-Parraga's luggage was one FN brand handgun with magazines, one Smith & Wesson brand handgun with magazines and four additional Glock brand magazines.

13. CBP observed the parts for each of the handguns were separated into two separate pieces of luggage. Some of the parts for the FN handgun were in one piece of luggage while the FN handgun's remaining parts were located in a different piece of

luggage. The parts for the Smith and Wesson handgun were similarly separated between the two pieces of checked luggage.

14. HSI SAs Drake and Kaufman interviewed TEJANA-Parraga regarding the attempted export of the firearms. CBP Officer Carlos Figueroa assisted with the language translation as TEJANA-Parraga stated she did not speak any English, but only spoke Spanish. The interview was audio recorded.

15. TEJANA-Parraga was provided her Declaration of Rights via ICE Form 73-025. TEJANA-Parraga advised she was willing to speak with law enforcement and answer questions at that time.

16. TEJANA-Parraga stated she was in Florida with her in-laws to do some shopping. She acknowledged the firearms located within her checked luggage were hers and she had purchased them at a Bass Pro Shop. TEJANA-Parraga claimed she paid cash, and the store did not require any form of identification. Additionally, TEJANA-Parraga claimed the firearms were sold to her from the shop already disassembled. Upon being challenged about the way she purchased the firearms, TEJANA-Parraga admitted she had not purchased the firearms from a shop, but they had been shipped to her while staying in Florida. TEJANA-Parraga stated she paid $600 U.S. dollars each for the two firearms but would not provide the identification of the individual who had shipped them to her. TEJANA-Parraga claimed her in-laws had no knowledge of this event.

17. Agents further questioned TEJANA-Parraga as to her knowledge of the legality of purchasing/possessing firearms when visiting the United States as a B1/B2

visitor. TEJANA-Parraga admitted to knowing it was illegal to having the firearms as a visitor to the United States.

18. Agents then questioned TEJANA-Parraga as to the manner of how the firearms were hidden in the suitcases. TEJANA-Parraga, initially claimed she had disassembled the firearms herself, but later admitted they had been shipped to her already taken apart. TEJANA-Parraga stated she and she alone hid the various parts of the firearms within her suitcase so authorities wouldn't see them.

19. TEJANA-Parraga claimed she did not think it would be a problem taking guns on a plane if they were disassembled. Per TEJANA-Parraga, she believed it would only be illegal if the handguns were assembled. Agents questioned TEJANA-Parraga further as to why she had bothered to separate the firearms into two different bags and hide parts within items of clothing and within the suitcase lining if they only needed to be disassembled to be transported. TEJANA-Parraga again claimed she did not know it would be a problem because they were not assembled.

20. Agents asked where the four additional Glock brand magazines came from, to which TEJANA-Parraga stated they were ordered on amazon prior to her arrival in the United States and she merely picked them up while in Florida to be taken back to Ecuador.

21. I submit that there is probable cause to believe that TEJANA-Parraga attempted export two firearms and four additional magazines from the United States to Ecuador on February 19, 2025, in violation of 18 U.S.C. § 554.

## IV.  CONCLUSION

22.  Based on the foregoing, there is probable cause to believe that TEJANA-Parraga has committed violations of 18 U.S.C. § 554. Accordingly, I request that the Court issue a warrant for her arrest as to that offense.

Ryan Drake, Special Agent
Homeland Security Investigations

Affidavit submitted by email and
attested to me as true and accurate
via telephone or video conference,
consistent with Fed. R. Crim. P. 4.1
and 4(d)(3), before me this 20th
day of February, 2025.

ALAN BAVERMAN
United States Magistrate Judge